# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-CV-81247-RLR

JAIMIE ROSE and RYAN ROSE, individually
and as Natural Guardians for their minor children
A.R. (newborn) and A.R. (2-year-old child),

      Plaintiffs,

v.

SHEVAUN HARRIS in her official capacity as
Secretary of FLORIDA DEPARTMENT OF
CHILDREN AND FAMILIES; KARA FASO;
COLONEL ANTONIO ARAUJO in his official
capacity as Acting Chief of Police of the City of
West Palm Beach; KEITH A. JAMES as Mayor
of the City of West Palm Beach; TENET
HEALTHSYSTEM MEDICAL, INC.; and
ST. MARY'S MEDICAL CENTER,

      Defendants.

_____/

## OMNIBUS ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court on the Motions to Dismiss filed by Defendants St.

Mary's Medical Center [DE 34], Kara Faso [DE 50], and Shevaun Harris [DE 51]. The Court has

reviewed the Motions, Plaintiff's Responses [DEs 42, 52, 53], Defendants' Replies [DEs 45, 56,

57], and the record and is otherwise fully advised in the premises. For the reasons below, and as

more fully set forth in this Order, Defendants' Motions are **GRANTED**.

### I.        BACKGROUND

This case arises from the treatment and separation that a family endured after the mother

gave birth to her second child. The factual allegations are as follows.

Plaintiffs Ryan Rose ("Mr. Rose") and Jaimie Rose ("Ms. Rose") sought what they believed to be high-quality and respectful prenatal care through a midwife in Florida. DE 16 ¶ 22. On October 1, 2020, Ms. Rose went to the midwife's birth center to deliver her second child. *Id.* ¶¶ 23–25.  At the birth center, Ms. Rose was informed that her child was in a frank breech position but consented to the midwife continuing with the delivery. *Id.* ¶ 25.

On October 7, 2020, Ms. Rose gave birth to her newborn child, Plaintiff A.R. ("A.R."). *Id.* ¶ 26.  Plaintiffs noticed that A.R. had an irregular breathing pattern and a slightly blue upper lip. *Id.* ¶ 27.  Plaintiffs decided to have A.R. examined at Defendant St. Mary's Medical Center ("SMCC"). *Id.* ¶¶ 27–28.  A pediatric surgery consult note in SMMC's medical records, dated October 8, 2020, described the bruising on A.R. as "without lacerations or bleedings" and that it "appears as if these are pressure induced injuries." *Id.* ¶ 30.

Upon arrival to the hospital, A.R. was taken by SMMC to be examined. *Id.* ¶ 29.  Ms. Rose was not permitted to hold her newborn again while in the hospital. *Id.*  Defendant Kara Faso ("Ms. Faso"), a caseworker with Defendant Florida Department of Children and Families ("DCF"), walked into Ms. Rose's hospital room and interrogated her about the "bruising" on her child, threatening Ms. Rose with jail. *Id.* ¶ 31.  Ms. Faso and other DCF caseworkers interrogated Plaintiff as to whether they had used A.R. as a human sacrifice based on Plaintiffs' belief in the Palo Mayombe religion. *Id.* ¶ 32.  After the interrogation, Ms. Faso and the DCF caseworker did not provide any explanation and told Ms. Rose, "We'll see you in court in 2 days." *Id.* ¶ 33.

While Ms. Rose was in the hospital, West Palm Beach police officers, Ms. Faso, and DCF interrogated Mr. Rose about the birth as DCF workers strip-searched Plaintiff's two-year-old child before forcibly seizing and taking her from Mr. Rose. *Id.* ¶ 34.

Two days after, Plaintiffs appeared virtually in court. *Id.* ¶ 36.  DCF accused Ms. Rose of not being the two-year-old child's mother and demanded that Plaintiffs take DNA tests to prove that they were the two-year-old child's parents. *Id.*  Based on DCF and Ms. Faso's allegations, both of Plaintiffs' children were placed in foster care in Palm Beach County. *Id.* ¶ 37.  While in foster care, the two-year-old child became delayed, nonverbal, and malnourished. *Id.* ¶ 40.  DCF refused Plaintiffs' requests to transfer the case to Plaintiffs' home county, Plaintiffs' requests advocating for their children's needs in foster care, and Plaintiff's request for DCF to speak with different medical experts to review the children's medical records. *Id.* ¶¶ 41–44.

After almost six months, Plaintiffs obtained a written affidavit from a certified professional midwife. *Id.* ¶ 45.  The midwife attested that based on the photos of A.R., records from the birth center, and records from SMMC, A.R.'s bruising was "clearly consistent with a frank breech birth." *Id.* ¶ 46.  On March 10, 2021, one day after receiving the affidavit, DCF voluntarily dismissed its case and returned the children to Plaintiffs. *Id.*

Plaintiffs and their minor children continue to suffer attachment issues, and Plaintiffs' mental and physical health suffered. *Id.* ¶ 50.

## II.      PROCEDURAL BACKGROUND

Plaintiffs filed their initial Complaint on October 8, 2024, DE 1, and filed their operative, Amended Complaint on January 27, 2025. DE 16.  Plaintiffs asserted several claims against Defendants Shevaun Harris in her official capacity as Secretary of Florida DCF ("DCF"), Kara Faso in her individual capacity, St. Mary's Medical Center ("SMMC"), Colonel Antonio Araujo in his official capacity as Acting Chief of Police of the City of West Palm Beach ("Araujo"), Keith A. James as Mayor of the City of West Palm Beach ("James"), and Tenet HealthSystem Medical,

Inc. ("Tenet"). *Id.*  Plaintiffs' Amended Complaint attaches their Administrative Complaint, which If/When/How: Lawyering for Reproductive Justice submitted to the U.S. Department of Health and Human Services Office of Civil Rights on November 15, 2023. *See* DE 16-1.

To date on the docket, Plaintiffs have not executed service of the Amended Complaint upon Tenet.  On June 10, 2025, Plaintiffs notified the Court that they settled their claims as to Araujo and James. DE 69.  Defendants SMMC, Ms. Faso, and DCF have responded with motions to dismiss. DEs 34, 50, 51.

Plaintiffs' claims against the responding Defendants are as follows: (I) Ms. Rose's claim for sex discrimination under Section 1557 of the Affordable Care Act ("ACA claim") as to DCF, Ms. Faso, and SMMC; (II) all Plaintiffs' claims for religious discrimination in violation of 42 U.S.C. § 1983 as to DCF, Ms. Faso, and SMMC; (III) Mr. and Ms. Rose's claims, as natural guardians for their two-year-old child, for § 1983 unlawful search and seizure as to DCF; (IV) all Plaintiffs' claims for § 1983 procedural due process violations as to DCF and Ms. Faso; (V) all Plaintiffs' claims for § 1983 violations of substantive due process and parental rights as to DCF, Ms. Faso, and SMMC; (VI) Mr. and Ms. Rose's claims for § 1983 equal protection violations as to DCF and Ms. Faso; (VII) Mr. and Ms. Rose's claims for malicious prosecution as to DCF and Ms. Faso; (VIII) all Plaintiffs' claims for gross negligence as to DCF and Ms. Faso; (IX) all Plaintiffs' claims for negligent supervision as to DCF and SMMC; (X) A.R.'s negligence claim as to DCF, Ms. Faso, and SMMC; and (XI) Mr. and Ms. Rose's negligence claim, individually and as natural guardians for their two-year-old child, as to DCF, Ms. Faso, and SMMC. DE 16.

### III.   STANDARD OF REVIEW

The plaintiff bears the burden to establish federal subject-matter jurisdiction. *Sweet Pea Marine, Ltd. V. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).  In moving to dismiss a complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction, a defendant may attack the complaint facially or factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  Facial attacks "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, and the allegations in the Complaint are taken as true for the purposes of the motion." *Id.* (citations omitted).  By contrast, factual attacks challenge "the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citation omitted).  "No presumption of truth attaches to the plaintiff's allegations, and the existence of a disputed material fact does not prevent the trial court from evaluating for itself the merits of the jurisdictional claim." *Duque Mendez v. Cuccinelli*, 467 F. Supp. 3d 1249, 1254 (S.D. Fla. 2020) (citing *Lawrence*, 919 F.2d at 1529).

A court may also grant a motion to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court ruling on a motion to dismiss a complaint accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017).  The court need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange*, 934 F.3d 1270, 1273 (11th Cir. 2019).  "Under Rule 12(b)(6), dismissal is proper when, on the basis of a dispositive issue of law, no construction of

the factual allegations will support the cause of action." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (quotation marks omitted).

## IV.    ANALYSIS

Defendants DCF, Ms. Faso, and SMMC have moved to dismiss each of the claims against them.  The Court first addresses the 42 U.S.C. § 1983 and state-law claims against each Defendant, beginning with (A) DCF, and whether Plaintiffs' claims are barred by sovereign immunity; (B) Ms. Faso, and whether Plaintiffs' claims are barred by sovereign immunity, are barred by qualified immunity, or fail to state a claim; and (C) SMMC, and whether Plaintiffs' claims are barred by statutory immunity or fail to state a claim.  The Court then discusses (D) Plaintiffs' ACA claim against each Defendant.

## A.    Department of Children and Families – Section 1983 and Negligence Claims

DCF argues that sovereign immunity bars all of Plaintiffs' claims against it. DE 51 at 8.  A suit against a state official in his or her official capacity is tantamount to a suit against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  "Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).  "This bar exists whether the relief sought is legal or equitable." *Nichols v. Ala. State Bar*, 815 F.3d 726, 731 (11th Cir. 2016) (quoting *Papasan v. Allain*, 478 U.S. 265, 276 (1986)).

This immunity does not apply (1) when a state waives its sovereign immunity and consents to suit in federal court; (2) when Congress, under Section 5 of the Fourteenth Amendment, abrogates a state's sovereign immunity by expressing its unequivocal intent to do so; and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law.

6

*Cox v. Robinson*, No. 23-11201, 2023 WL 8948406, at *1–2 (11th Cir. Dec. 28, 2023) (citing *Harbert v. Int'l, Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998)).  Otherwise, "the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court." *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986).

Florida Statute § 768.28 provides a limited waiver of sovereign immunity.  The statute specifies that an officer, employee, or agent of the state or any of its subdivisions can be held personally liable in tort, or named as a party defendant, only if the agent acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).  To establish "wanton and willful" misconduct, the employee's conduct must arise to a level greater than gross negligence to be actionable under § 768.28(9)(a). *Ondrey v. Patterson*, 884 So. 2d 50, 54 (Fla. Dist. Ct. App. 2004).  Florida has not waived its immunity for constitutional torts. *Gamble*, 779 F.2d at 1515; Fla. Stat. § 768.28(18).

Here, Plaintiffs have sued Ms. Harris in her official capacity as Secretary of the Florida Department of Children and Families.  DCF argues that sovereign immunity bars Plaintiffs' § 1983 civil rights claims (Counts II, III, IV, V, VI), and that because Plaintiffs failed to comply with their pre-suit notice requirements, Plaintiffs' tort claims (Counts VII, VIII, IX, X, XI) are also barred.

**First,** as to Plaintiffs' § 1983 civil rights claims against DCF, Plaintiffs' Amended Complaint explicitly seeks monetary damages. *See, e.g.*, DE 16 ¶ 75.  But without a waiver of sovereign immunity, these "claims for money damages against the Florida Department of Children and Families and its Secretary (in his official capacity) [are] barred by the Eleventh Amendment." *Freeze v. Sec'y, Dep't of Child. & Fams.*, 825 F. App'x 606, 609 (11th Cir. 2020).  In their Response, Plaintiffs argue that their constitutional claims against DCF are not barred by sovereign

immunity because Plaintiffs' Administrative Complaint, filed with the U.S. Department of Health and Human Services Office of Civil Rights, included claims for injunctive relief to remedy ongoing constitutional violations. DE 53 at 9. Because the Administrative Complaint was attached to and incorporated into Plaintiffs' Amended Complaint, Plaintiffs argue, Plaintiffs' constitutional claims should not be dismissed.[1] *Id.*

DCF replies that Plaintiffs' "previous request for investigation to a federal agency does not then convert Plaintiffs' current-day requests for compensatory, retrospective relief into requests for injunctive, prospective relief." DE 57 at 4. The Court agrees. Each prayer for relief in Plaintiffs' Amended Complaint clearly seeks money damages and not injunctive relief. Because the "wherefore" clauses in Plaintiffs' Amended Complaint control, Plaintiffs' § 1983 constitutional claims against DCF (Counts II, III, IV, V, VI) are **DISMISSED** because they are barred by sovereign immunity.

**Second**, DCF argues that Plaintiffs' tort claims against DCF (Counts VII, VIII, IX, X, XI) must be dismissed because Plaintiffs have not complied with Florida's pre-suit notice requirements and therefore sovereign immunity has not been waived. DE 51 at 11. Notice pursuant to Florida Statute § 768.28(6) is a condition precedent to bringing a tort claim against the state. *Pirez v. Brescher*, 584 So. 2d 993, 995 (Fla. 1991); Fla. Stat. § 768.28(6)(b). The required notice is as follows:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of

---

[1] Plaintiffs also request that in the alternative, if this Court were inclined to grant DCF's Motion to Dismiss, the Court provide leave for Plaintiffs to file a Second Amended Complaint. The Court notes that "[w]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999).

> Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing[.]

Fla. Stat. § 768.28(6)(a).

Plaintiffs argue that they complied with the pre-suit notice requirements. DE 53 at 16. Plaintiffs' Amended Complaint alleges that "[p]ursuant to Fla. Stat. 768.28, Defendants [DCF, Faso, and SMMC] were provided a Notice of Claim and injury" and cites to the attached Administrative Complaint. DE 16 ¶ 9 (referencing DE 16-1). The Administrative Complaint was submitted by If/When/How: Lawyering for Reproductive Justice on November 15, 2023, to the U.S. Department of Health and Human Services Office of Civil Rights. DE 16-1 at 11. DCF was listed as a recipient of the Administrative Complaint. *Id.* at 2. Plaintiffs assert that based on the Administrative Complaint, "sufficient notice was provided by [If/When/How] and/or the U.S. Department of Health and Human Services Office of Civil Rights" within three years after Plaintiffs' claims accrued—that is, "on or before March 10, 2024, three years from when the children were returned to Plaintiffs." DE 53 at 16; DE 16-1; DE 16 ¶ 46. Plaintiffs assert that "Florida courts have held that substantial compliance with the notice requirements is sufficient," but fail to provide any legal authority for that assertion. DE 53 at 16.

The pre-suit requirement explicitly requires, however, that *the claimant* presents the claim in writing to both the appropriate agency *and* the Department of Financial Services within three years after the claim accrues. Fla. Stat. § 768.28(6)(a). And "[i]n interpreting legislative waivers of sovereign immunity," the Florida Supreme Court has "repeatedly stated that [courts] must strictly construe such waivers." *Metro. Dade Cnty. v. Reyes*, 688 So. 2d 311, 313 (Fla. 1996) (collecting cases). Therefore, "Florida state and federal courts strictly construe this notice requirement and require plaintiffs to plead compliance with the notice provisions of Section

768.28(6)." *Morris v. City of Orlando*, No. 6:10-CV-233-ORL, 2010 WL 4646704, at *8 (M.D. Fla. Nov. 9, 2010) (collecting cases).

Here, Plaintiffs have not alleged the proper pre-suit notice requirement. Plaintiffs have not alleged that Plaintiffs presented written notice to DCF and the Department of Financial Services within three years of the accrual of Plaintiffs' claims. Therefore, Plaintiffs' tort claims against DCF (Counts VII, VIII, IX, X, XI) are **DISMISSED** for failure to allege compliance with a condition precedent to Florida's waiver of sovereign immunity. The Court does not reach DCF's other arguments.

**B.    Kara Faso – Section 1983 and Negligence Claims**

Ms. Faso argues that Plaintiffs' § 1983 and negligence claims against her are barred based on sovereign immunity, qualified immunity, and Plaintiffs' failure to state a claim. DE 50.

Before turning to Ms. Faso's arguments, the Court addresses an issue concerning Plaintiffs' attached Administrative Complaint. DE 16-1. Exhibits attached to a complaint can be considered with the complaint at the motion-to-dismiss stage. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Attachments are particularly salient when a defendant raises a qualified immunity defense because the Eleventh Circuit requires that qualified immunity be resolved "at the earliest possible stage in litigation." *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (citing *Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.")). When "a plaintiff attaches documents and

10

relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002)).

Here, Plaintiffs have attached their Administrative Complaint to their Amended Complaint, which Plaintiffs explicitly allege provided a Notice of Claim and injury pursuant to Fla. Stat. § 768.28 to all responding Defendants. DE 16 ¶ 9; *see* Part IV.A.  Because Plaintiffs allege that the content of the Administrative Complaint provide notice of their claims and injuries against the responding Defendants, Plaintiffs rely upon the attachment to form the basis for part of their claims.

Therefore, the Court's ensuing analyses are premised on the specific factual allegations in both Plaintiff's Amended Complaint and the attached Administrative Complaint.  These include the following facts from the attachment.  "[I]mmediately" after the newborn's birth, Ms. Rose noticed that the newborn "had some bruising on her buttocks" due to pressure from the birth canal because the newborn "was born in the frank breech position." DE 16-1 ¶ 15.  The morning after Ms. Rose and her child were admitted to the hospital, "DCF caseworkers walked into Ms. Rose's hospital room and immediately began interrogating her about the bruising on [the newborn's] butt." *Id.* ¶ 18.  Finally, "midwives are not permitted to attend breech births in the state of Florida." *Id.* ¶ 16; *see also* Fla. Stat. § 467.015(1) (governing the "[r]esponsibilities of the midwife," and mandating that a "midwife shall accept and provide care for only those mothers who are expected to have a normal pregnancy, labor, and delivery").

With these allegations in mind, the Court turns to Ms. Faso's arguments.

1.  <u>Sovereign Immunity – Negligence Claims</u>

Plaintiffs bring three negligence claims against Ms. Faso, premised upon the initial seizure of the children (Count VIII) and the continued separation of the newborn (Count X) and the two-year-old child (Count XI) from Plaintiffs. DE 16 at 22–24.

Ms. Faso argues that Plaintiffs' negligence claims against her are barred by sovereign immunity because Ms. Faso was acting in her capacity as an employee of DCF and therefore could not be held personally liable. DE 50 at 18; *see* Part IV.A.   Florida law "immunizes public employees from personal liability for torts by requiring any civil action for the employee's negligence to be maintained against the governmental entity." *Holmes Cnty. Sch. Bd. v. Duffell*, 651 So. 2d 1176, 1178 (Fla. 1995).   Florida has waived that immunity only when an employee's action, committed in the scope of her employment or function, was "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 968.28(9)(a).   An employee's conduct is wanton and willful, and therefore actionable under § 768.28(9)(a), when the conduct is "worse than gross negligence." *Coleman v. Hillsborough Cnty.*, 41 F.4th 1319, 1325 (11th Cir. 2022) (discussing Florida cases).   The conduct must be "much more reprehensible and unacceptable than mere intentional conduct." *Id.*

Here, Plaintiffs have alleged that Ms. Faso acted within the course and scope of her employment as an investigator for DCF. DE 16 ¶ 13.   Plaintiffs argue that their negligence claims against Ms. Faso should not be dismissed because they have adequately alleged that Ms. Faso acted willfully and wantonly to injure Plaintiffs. DE 52 at 13.

Based on the allegations, however, the Court is not persuaded that Ms. Faso acted willfully and wantonly.   Regarding Ms. Faso's initial seizure of the newborn (Count VIII), it is reasonable—

indeed, most plausible—to infer that DCF seized the newborn based on the hospital's report of potential child abuse because the newborn had bruising and "pressure induced injuries" on her body. *See* DE 16-1 ¶ 18 (". . . DCF caseworkers walked into Ms. Rose's hospital room and immediately began interrogating her about the bruising."); *id.* ¶ 25.

Regarding the continued separation of the newborn (Count X) and the two-year-old child (Count XI) from their parents, Plaintiffs allege that Ms. Faso refused to review evidence that would potentially return the children to Plaintiffs. *Id.* ¶¶ 20, 24–25.  This evidence included a birth report prepared by Plaintiffs' midwife showing that the newborn was healthy and stable after being born, *id.* ¶ 20, and medical experts who could confirm that the newborn's bruising was consistent with pressure from the birth canal due to the newborn's frank breech positioning, *id.* ¶ 24.  Plaintiffs allege that DCF refused to speak with the experts "and responded simply by telling Ms. Rose that she could go to jail." *Id.*  The asserted evidence, however, confirms that a midwife delivered the newborn in frank breech positioning, which is "not permitted . . . in the state of Florida." *Id.* ¶ 16; *see* Fla. Stat. § 467.015.  Ostensibly, Ms. Faso refused to review reports that confirmed a violation of Florida law that was enacted with the intention of protecting children.

Therefore, Plaintiffs have not alleged that Ms. Faso exhibited a willful and wanton disregard of human rights or safety such that Ms. Faso may be held individually liable for money damages on Plaintiffs' negligence claims.  Plaintiffs' negligence claims against Ms. Faso (Counts VIII, X, XI) are therefore **DISMISSED** based on sovereign immunity.

2.  Qualified Immunity – Section 1983 Claims

Ms. Faso argues that qualified immunity bars Plaintiffs' § 1983 constitutional claims (Counts II, IV, V, VI) against her. DE 50 at 11.  "Qualified immunity shields government officials

from individual-capacity suits for actions taken while performing a discretionary function so long as their conduct does not violate a 'clearly established' constitutional right." *Montanez v. Carvajal*, 889 F.3d 1202, 1207 (11th Cir. 2018) (citation omitted).  Whether qualified immunity applies is a question of law for a court to decide. *Sims v. Metro. Dade Cty.*, 972 F.2d 1230, 1234 (11th Cir. 1992).

If an official establishes that she was acting within his discretionary authority,[2] the burden shifts to the plaintiff to show that the official violated a constitutional right that was clearly established at the time of the incident. *Montanez*, 889 F.3d at 1207.  In this circuit, a plaintiff can meet this burden in one of three ways: (1) come forward with "case law with indistinguishable facts clearly establishing the constitutional right"; (2) point to "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right"; or (3) show that officials engaged in "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1323–24 (11th Cir. 2024), *cert. denied sub nom. Moats v. Jarrard*, No. 24-887, 2025 WL 1426679 (U.S. May 19, 2025) (quoting *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021)).

"That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (quoting *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (emphasis in original)).  "Plaintiffs cannot carry

---

[2] To be entitled to qualified immunity, an official must establish that she was acting within his discretionary authority during the incident. *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018).  The official proves that she acted within her discretionary authority "by showing objective circumstances which would compel the conclusion" that the official's actions were undertaken pursuant to the performance of her duties and within the scope of her authority. *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (citation omitted).  Here, Plaintiffs allege that Ms. Rose acted at all material times within the scope of her employment with DCF. DE 16 ¶ 13.

their burden of proving the law to be clearly established by stating constitutional rights in general terms." *Id.*

Given this framework, the Court assesses whether Plaintiffs have met their burden to demonstrate that the law was clearly established with respect to each § 1983 and negligence claim asserted against Ms. Faso.

### a.   Religious Discrimination

Plaintiffs assert that Ms. Faso engaged in religious discrimination against Plaintiffs, who are members of the Palo Mayombe religion, in violation of Plaintiffs' First Amendment rights to free exercise of religion (Count II) and Plaintiffs' Fourteenth Amendment rights to equal protection (Count VI).[3] DE 16 ¶¶ 70–71, 103.

Plaintiffs allege that Ms. Faso interrogated Plaintiffs as to whether they had used their child as a human sacrifice based on discriminatory and untrue assumptions. *Id.* ¶¶ 72–73.  Plaintiffs allege that Ms. Faso and other caseworkers alleged, both in and out of court, that the newborn's bruising was indicative of her having been used as a "human sacrifice." *Id.* ¶ 104.  "Using these erroneous and baseless allegations, Defendants unlawfully removed the minor children from their parents," even though Defendants should have known that the bruising on the newborn was consistent with pressure-induced bruising from birth. *Id.* ¶¶ 74–75.

The Eleventh Circuit's reasoning in *Foy v. Holston* is instructive. 94 F.3d 1528 (11th Cir. 1996).  In *Foy*, the plaintiffs argued that placing and keeping a child in foster care, among other actions, violated the plaintiffs' constitutional rights—including disparate treatment based on

---

[3] Plaintiffs also assert, for the first time, disparate treatment based on race. DE 16 ¶ 103.  Because the Amended Complaint does not allege Plaintiffs' membership in a protected class based on race, nor bring a separate race discrimination claim, the Court does not discuss the issue.

religion—because the defendants acted as they did out of a hostility toward the religious teachings at issue. *Id.* at 1533.  But because officials can be motivated by hostility toward a protected class and still act lawfully, and because the defendants had cause to understand that the child was possibly being mistreated, the defendants were justified in keeping and placing the child in foster care and were therefore entitled to immunity. *Id.* at 1534–35.  The Eleventh Circuit held that because it was not "already clearly established when Defendants acted that no child custody worker could lawfully act—that is, do what Defendants did—to protect children in the circumstances of this case if the worker also acted, in part, out of hostility toward the parent's religion, Defendants are entitled to immunity." *Id.* at 1536.

That principle applies here.  Plaintiffs alleged that A.R. was born with an irregular breathing pattern and a slightly blue upper lip. DE 16 ¶ 27.  SMMC medical records indicated that the child had bruising and "pressure induced injuries." *Id.* ¶ 30.  Ms. Faso interrogated Ms. Rose about this bruising as part of an investigation into potential child abuse. *Id.* ¶ 31.  Following *Foy*, because it is not plain, as a legal matter, "under the specific facts and circumstances of the case that [Ms. Faso's] conduct—despite [her] having adequate lawful reasons to support the act—was the result of [her] unlawful motive," Ms. Faso is entitled to qualified immunity. *Foy*, 94 F.3d at 1535.  Counts II and VI against Ms. Faso are therefore **DISMISSED**.

### b. *Substantive Due Process Violation*

Plaintiffs assert that Ms. Faso violated Plaintiffs' fundamental parenting rights under the Fourteenth Amendment when Plaintiffs' children were removed without probable cause (Count V). DE 16 ¶ 100.  Plaintiffs point to parents' "constitutionally protected liberty interest in the care, custody and management of their children." *Doe v. Kearney*, 329 F.3d 1286, 1293 (11th Cir. 2003).

A substantive due process violation occurs when (1) there has been a deprivation of a constitutionally protected interest and (2) the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation. *Executive 100, Inc. v. Martin Cnty.*, 922 F.2d 1536, 1541 (11th Cir. 1991).  "[C]onduct by a government actor will rise to the level of a substantive due process violation if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003).

"[S]ubstantive due process is a doctrine that has been kept under tight reins, reserved for extraordinary circumstances." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1379 (11th Cir. 2002).  The Eleventh Circuit has stated that "[f]amily relationships are an area of state concern, and the state has a compelling interest in removing children who may be abused." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1206 (11th Cir. 2012) (quoting *Foy*, 94 F.3d at 1536).  For that reason, "it is no surprise that state officials who investigate allegations of child abuse and in so doing disrupt a family have been entitled to qualified immunity." *Id.* at 1206–07 (citing *Foy*, 04 F.3d at 1537).

Plaintiffs allege that Defendants ignored available factual evidence in order to deprive Plaintiffs of their parenting rights. DE 16 ¶ 101.  Plaintiffs allege that their children were placed in foster care based in part on accusations by Ms. Faso. *Id.* ¶ 37.  But "the right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Foy*, 94 F.3d at 1536–37 (citation omitted).  And for the same reasons that Ms. Faso is qualifiedly immune as to Count II—that she did not violate a clearly established right by investigating after a hospital reported potential child abuse because bruising was observed on a newborn—the Court is not persuaded that Ms. Faso's conduct resulted from her unlawful motive to violate a clearly

17

established right. DE 50 at 16; *see* Part IV.B.2.a.  Therefore, Plaintiffs' claim as to Count V against Ms. Faso is **DISMISSED**. *Foy*, 94 F.3d at 1536–37.

    3.  <u>Failure to State a Claim</u>

    Plaintiffs' remaining § 1983 and state-law claims against Ms. Faso are for violation of procedural due process (Count IV) and for malicious prosecution (Count VI).  A § 1983 plaintiff must allege with specificity the facts that make out her claim. *See Wilson v. Strong*, 156 F.3d 1131, 1134 (11th Cir. 1998) ("[T]he contours of an asserted constitutional right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" (citation omitted)).  Factual detail in the pleadings is particularly necessary in cases involving qualified immunity, where the Court must determine whether a defendant's actions violated a clearly established right. *GJR Investments v. Cty of Escambia, Fla.,* 132 F.3d 1359, 1367 (11th Cir. 1998).

    For the reasons below, Plaintiffs have not adequately pled either claim.

    *a.  Procedural Due Process*

    Plaintiffs assert that Ms. Faso violated Plaintiffs' Fourteenth Amendment procedural due process rights (Count IV) when she removed the minor children from their parents' custody. DE 16 ¶ 95.  In the Eleventh Circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994).

    Here, Plaintiffs assert that their procedural due process rights were violated "through court action obtained through Defendants['] material misrepresentations and omissions made deliberately or with a reckless disregard for the truth." DE 16 ¶ 96.  Plaintiff's incorporated factual

allegations assert that Ms. Faso did not explain the investigation process, why Ms. Rose had to go to court, or what would happen to Plaintiff's children. *Id.* ¶ 33. And Plaintiffs' children were placed in foster care after a court hearing based on accusations by DCF and Ms. Faso. *Id.* ¶ 37. But Plaintiffs stop short of specifying the substance of the accusations relied upon at the court hearing, how those accusations were misrepresentations, and how else Ms. Faso, specifically, deprived Plaintiffs of their procedural due process.

Without specific factual allegations about Ms. Faso's alleged material misrepresentations and omissions, the Court is unable to assess whether Plaintiffs have pled that they received "constitutionally inadequate process" from Ms. Faso, and whether qualified immunity might apply. *See generally Grayden v. Rhodes*, 345 F.3d 1225 (11th Cir. 2003) (assessing first whether the plaintiffs had alleged a violation of their right to constitutionally adequate notice under the Fourteenth Amendment in order to determine whether that right was clearly established). Therefore, Plaintiffs' procedural due process claim (Count IV) as to Ms. Faso is **DISMISSED** for failure to state a claim.

### b. *Malicious Prosecution*

Plaintiffs assert a malicious prosecution claim (Count VII) against Ms. Faso. DE 16 at 21–22. To prevail in a malicious prosecution action, a plaintiff must establish that:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). "The failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution." *Id.*

To start, Plaintiffs have not specified how Ms. Faso was the legal cause of the original proceeding against Plaintiffs. Furthermore, the Court is not persuaded that there was an absence of probable cause for the original proceeding—and that there was malice on Ms. Faso's part—for the same reasons that sovereign immunity and qualified immunity apply to some of the claims against Ms. Faso. *See* Part IV.B.1–2. Plaintiffs do allege that Defendants "initially concealed," "initially omitted," and "never mentioned" certain dispositive evidence to the court in the original proceeding. DE 16 ¶ 109. Plaintiffs do not specifically allege that Ms. Faso—rather than DCF—engaged in this conduct. *See* Part IV.B.1. Nor do Plaintiffs provide specific factual bases for their assertion that Ms. Faso concealed evidence from the court in the original proceeding. Therefore, Plaintiffs' claim for malicious prosecution (Count VII) as to Ms. Faso is **DISMISSED** for lack of detailed and specific factual allegations.

## C.    St. Mary's Medical Center – Section 1983 and Negligence Claims

SMMC argues that Plaintiffs' negligence claims should be dismissed because Plaintiffs failed to state a claim, and that Plaintiffs' § 1983 claims against SMMC should be dismissed because SMMC is not a state actor. DE 34. Furthermore, SMMC argues that—assuming for purposes of the Motion to Dismiss that it was an SMMC agent or employee who called DCF—SMMC is immune from liability as a mandatory reporter. *Id.* at 12. The Court construes Plaintiffs' Amended Complaint as alleging that an SMMC agent or employee called DCF because Plaintiffs refer in their Amended Complaint to the immunity granted to mandatory reporters, DE 16 ¶ 58, and because Plaintiffs' Administrative Complaint stated that "[b]y calling DCF to initiate an

investigation, and by forcibly removing [the children] from their parents . . . [SMMC] and DCF violated Section 1557," DE 16-1 ¶ 29.  The Court first addresses the immunity issue.

    1.  <u>Statutory Immunity – Negligence Claims</u>

SMMC argues that Plaintiffs' negligence claims against it should be dismissed because SMMC is immune as a mandatory reporter under Fla. Stat. § 39.201, *et seq*. DE 34 at 12.  Florida law requires persons who have reasonable cause to suspect child abuse to immediately report that suspected abuse. Fla. Stat. § 39.201(1)(a).  Health care professionals, including "hospital personnel engaged in the admission, examination, care, or treatment of persons," are mandatory professional reporters who must provide their names when making a report to the central abuse hotline. *Id.* § 39.201(1)(b)(2)(a), (b).  Furthermore, "[a]ny person, official, or institution . . . reporting in good faith any instance of child abuse . . . to the department or any law enforcement agency, shall be immune from any civil or criminal liability which might otherwise result by reason of such action." Fla. Stat. § 39.203(1)(a).  "Failure to make the report is a crime." *Urquhart v. Helmich*, 947 So. 2d 539, 542 (Fla. Dist. Ct. App. 2006) (citing Fla. Stat. § 39.205(1)).

Based on the mandatory reporting and general immunity provisions, Florida courts have determined that as to medical doctors and other healthcare professionals, "[i]mmunity exists as a matter of law if the doctor has reasonable cause to suspect that the child has been abused and makes a report of the abuse as required by law.  In that event, there is no need to determine whether the doctor acted in good faith." *Id.*  "[O]nce reasonable cause has been shown, 'a reporter complying with the statutory mandate to make a report is, by definition, operating, in good faith.'" *Id.* (quoting *O'Heron v. Blaney*, 583 S.E.2d 834, 836 (Ga. 2003)).  Florida courts reasoned that concluding "that the legislature has exposed a doctor to civil liability for doing nothing more than

what it has required the doctor to do under penalty of law" would lead to an "unreasonable" result that was "inconsistent" with the meaning of the statute's mandatory reporting and general immunity provisions. *Id.* "Because the report is required by law, it is not necessary to determine whether it was made in good faith. The doctor's feelings about the child's parent or caretaker, whatever they might be, are irrelevant." *Id.*

The Court finds this reasoning persuasive. The Court construes Plaintiffs' Amended Complaint as alleging that SMMC failed to act in good faith because they reported potential child abuse even though they "knew or reasonably should have known that the bruising on A.R. was consistent with a breeched birth."[4] DE 16 ¶ 60. Therefore, the question of law before the Court is whether the SMMC personnel had reasonable cause to suspect that a child had been abused. *Urquhart*, 947 So. 2d at 542. Plaintiffs allege that they took their newborn to SMMC after observing that the child had an irregular breathing pattern and a slightly blue upper lip, DE 16 ¶¶ 27–28, as well as bruising on her body, DE 16-1 ¶ 15. At the hospital, SMMC employees took the newborn to be examined. DE 16 ¶ 29. SMMC medical records state that the child's bruising was "without laceration or bleedings" but appeared to be "pressure induced injuries." *Id.* ¶ 30.

Based on these allegations, SMMC personnel had reasonable cause to suspect child abuse after observing bruising on a newborn's body and acted in compliance with their mandatory reporter status by reporting the potential abuse. Therefore, the Court determines that statutory

---

[4] Plaintiffs also allege that "Defendants failed to inform the Court presiding over the judicial proceedings involving the removal of the children, of medical records in their possession documenting A.R.'s bruising was caused by birth, which led to the newborn being separated from her family for the first 6 months of her life." DE 16 ¶ 61. Plaintiffs do not include any such allegations as to SMMC specifically, however, in their Amended and Administrative Complaints.

immunity applies and that the state-law claims against SMMC (Counts IX, X, XI) can be **DISMISSED** on this basis.

    2.  Failure to State a Claim – Negligence Claims

Even if SMMC were not immune by statute, SMMC has also argued that Plaintiffs' negligence counts (Counts IX, X, XI) against SMMC should be dismissed for failure to state a claim.  For the reasons below, the Court agrees.

In Count XI, Plaintiffs bring a negligence claim on behalf of Mr. Rose and Ms. Rose, individually and as Natural Guardians for their two-year-old child.  Plaintiffs allege that by "failing to conduct a good-faith investigation, conducting unlawful searches and/or seizures, and separating Mr. And Ms. Rose from their children," SMMC caused harm to the relationship between Plaintiffs and their two-year-old child by "removing or detaining their children without their consent." DE 16 ¶¶ 127, 129.  But Plaintiffs provide no allegations as to any relationship between SMMC and the two-year-old child—who did not receive supervision or care at the hospital—that would give rise to a duty, nor allegations as to SMMC's involvement in removing or detaining Plaintiffs' two-year-old child. *See* DE 16 ¶¶ 125–31, DE 16-1 ¶ 19.

In Count IX, Plaintiffs bring a negligence claim on behalf of all Plaintiffs as to SMMC for negligent supervision.  Plaintiffs allege that SMMC breached their duty of care to all Plaintiffs by failing to properly supervise its employees, therefore "resulting in violation of Plaintiffs['] constitutional rights, failure to consider alternatives to separating Plaintiffs from their children, and unlawfully removing the children from their parents." DE 16 ¶ 118.  Again, Plaintiffs have not sufficiently alleged SMMC's specific involvement in separating and removing the children from their parents.

In Count X, Plaintiffs bring a negligence claim on behalf of the newborn A.R.  Plaintiffs allege that upon assuming custody of the child, SMMC owed a duty of care to act in the child's best interest. DE 16 ¶ 121.  Plaintiffs allege that SMMC breached that duty, which "resulted in the malnourishment of the newborn and deprivation of skin-to-skin contact with their mother in critical hours where bonding after birth is essential." *Id.* ¶¶ 122–23.  Plaintiffs appear to base their claim on a special duty of care that requires SMMC act in the child's best interest.  But Plaintiffs have not specified from where this special duty arises, and Plaintiffs provide no legal authority for this standard of care. *See* DE 42 at 17.  The Court is therefore unable to assess whether Plaintiffs have established each element of their negligence claim. *See Martin v. City of Tampa*, 351 So. 3d 75, 77 (Fla. Dist. Ct. App. 2022) (explaining that legal duties arise from (1) legislative enactments or administrative regulations; (2) judicial interpretations of those enactments or regulations; (3) judicial precedent; and (4) a duty arising from the general facts of the case (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003))).

Because Plaintiffs have not provided adequate factual and legal bases as to their negligence claims against SMMC, Counts IX, X, and XI are **DISMISSED**.

3.   State Actor – Section 1983 Claims

SMMC argues that Counts II and V, which allege constitutional violations under 42 U.S.C. § 1983, should be dismissed because SMMC is not a state actor. DE 34 at 5.  To state a cause of action for a § 1983 claim, "the party charged with the [constitutional] deprivation must be a person who may fairly be said to be a state actor." *Haynes v. Sacred Heart Hosp.*, 149 F. App'x 854, 855 (11th Cir. 2005) (quoting *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000)).  A private hospital is subject to § 1983 "only if its activities are significantly affected with state

involvement." *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993) (citation omitted). There are three primary tests to determine whether state action exists: public function, state compulsion, and nexus/joint action. *Willis*, 993 F.2d at 837.

Plaintiffs allege that SMMC is a state actor because it "exercised powers that are traditionally reserved to the state in the seizure of Plaintiffs' newborn child and the deprivation of Plaintiffs' parental and constitutional rights" and because SMMC has "received billions of dollars in federal funding." DE 16 ¶ 69. But Plaintiffs' only specific, nonconclusory allegations as to SMMC relate to when SMMC took the newborn for examination and then ignored or dismissed Ms. Rose's requests to continue bonding and have skin-to-skin contact with her baby, DE 16 ¶ 29, and to when SMMC reported potential child abuse to DCF.

Based on these allegations, the Court agrees with Defendant that Plaintiffs have not established state action by SMMC. **First,** because healthcare is not a traditional state function in the United States, SMMC is not a state actor under the public function test. *See Willis*, 993 F.2d at 840 (concluding that the hospital did not exercise powers traditionally reserved exclusively to the state). **Second,** because Plaintiffs provide no factual support for the conclusion that the state coerced or significantly encouraged SMMC in its actions as a healthcare provider, SMMC is not a state actor under the state compulsion test. *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003).

**Third,** SMMC is not a state actor under the nexus/joint action test, which requires that the private and state actors have an interdependent, symbiotic relationship regarding the specific conduct of which Plaintiffs complain. *Emmanuelli v. Priebus*, 500 F. App'x 886, 889 (11th Cir. 2012). This test applies when "the state has so far insinuated itself into a position of

25

interdependence with the [private party] that it was a joint participant in the enterprise." *Focus on the Family*, 344 F.3d at 1277 (alteration in original) (citation omitted).  SMMC was not acting as "merely a surrogate for the state" when SMMC took the newborn for examination and dismissed Ms. Rose's requests to continue bonding with her child while both were patients at the hospital. *Id.* at 1279.  And Plaintiffs provide no specific allegations that SMMC—rather than DCF— removed the children from Plaintiffs.  Plaintiffs argue that "DCF relied heavily on the reports and recommendations of SMMC staff in deciding to remove the children." DE 42 at 15.  But Plaintiffs do not specifically allege this fact—nor the substance of SMMC staff's "reports and recommendations"—in their Amended Complaint. *See* DE 16 ¶¶ 72–74.  And to the extent that Plaintiffs' argument is based on SMMC reporting suspected child abuse to DCF, the Court is not persuaded that this action satisfies the nexus/joint action test.  If that were the case, Florida's mandatory reporter provision would convert "all persons" to state actors. Part IV.C.1.  And only in rare circumstances may a private party be deemed a state actor for purposes of § 1983. *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001).

As pled, Plaintiffs have not adequately alleged that SMMC is a state actor.  Therefore, Counts (II) and (V) against SMMC are **DISMISSED**.

**D.      All Defendants – ACA Claim**

Finally, the Court turns to Plaintiffs' ACA claim (Count I) as to DCF, Ms. Faso, and SMMC for violating § 1557 of the Affordable Care Act.  Section 1557 of the Affordable Care Act prohibits certain types of discrimination, and states in relevant part:

> [A]n individual shall not, on the ground prohibited under . . . title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial

assistance, . . . or under any program or activity that is administered by an Executive Agency or any entity established under this title.

42 U.S.C. § 18116(a).  The provision further states that "[t]he enforcement mechanisms provided for and available under such . . . title IX . . . shall apply or purposes of violations of this subsection." *Id.*

Courts in the Eleventh Circuit have recognized an implied private right of action in this ACA nondiscrimination provision. *See, e.g.*, *Griffin v. Verizon Commc'ns Inc.*, No. 1:16-CV-80-AT, 2017 WL 6350596, at *3 n.3 (N.D. Ga. Sept. 26, 2017), *aff'd*, 746 F. App'x 873 (11th Cir. 2018) (collecting cases); *Jolley v. Riverwoods Behav. Health, LLC*, No. 1:21-CV-00561-WMR, 2021 WL 6752161, at *4 (N.D. Ga. Aug. 30, 2021).  To state a claim under § 1557 of the ACA, a plaintiff must show that she (1) was a member of a protected class, (2) qualified for the benefit or program at issue, (3) suffered an adverse action, and (4) the adverse action gave rise to an inference of discrimination. *Griffin v. Gen. Elec. Co.*, 752 F. App'x 947, 949 (11th Cir. 2019) (citing 42 U.S.C. § 2000d; 20 U.S.C. § 1681).

DCF has moved to dismiss based on sovereign immunity and failure to state a claim; Ms. Faso has moved to dismiss based qualified immunity and failure to state a claim; and SMMC has moved to dismiss based on failure to state a claim.  The Court addresses each Defendant's arguments in turn.

    1. <u>Department of Children and Families</u>

DCF has moved to dismiss Ms. Rose's § 1557 claim based on sovereign immunity and because Ms. Rose has failed to allege discriminatory, adverse actions taken by DCF. DE 51 at 10.

a. *Sovereign Immunity*

DCF argues that Ms. Rose's § 1557 claim is barred because there has been no waiver of sovereign immunity. DE 51 at 9.  Plaintiffs respond that Congress has explicitly abrogated state sovereign immunity for claims against state entities, like DCF, that receive federal financial assistance. DE 53 at 11.

There are two well-established exceptions to state's Eleventh Amendment sovereign immunity. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985).  First, a state may waive its immunity and consent to suit in federal court. *Id.*  Second, Congress may abrogate states' sovereign immunity through the enforcement provisions of § 5 of the Fourteenth Amendment." *Id.*

Here, the ACA nondiscrimination provision was promulgated under Congress's Spending Clause power. U.S. Const., Art. I, § 8, cl. 1; *see generally Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 537 (2012).  Under the Spending Clause power, the federal government may condition a waiver of state sovereign immunity upon the receipt of federal funds. *Atascadero*, 473 U.S. at 238 n.1.  "[A] Spending Clause waiver requires an 'unequivocal indication' that a State has consented to federal jurisdiction—either 'by the most express language or by such overwhelming implication from the text as (will) leave no room for any other reasonable construction.'" *Sandoval v. Hagan*, 197 F.3d 484, 493 (11th Cir. 1999), *rev'd sub nom. on other grounds*, *Alexander v. Sandoval*, 532 U.S. 275 (2001) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  "To satisfy this 'clear statement' waiver requirement, a statute must evince a 'clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity.'" *Id.* (quoting *Atascadero*, 473 U.S. at 247).  "Where Congress has unambiguously conditioned the receipt of federal funds on a waiver of immunity," a state cannot "continue to

accept federal funds without knowingly waiving its immunity." *Garrett v. Univ. of Alabama at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1293 (11th Cir. 2003).

Therefore, the question is not whether Congress has abrogated sovereign immunity, but whether Florida has waived its sovereign immunity in receiving federal funds.   The nondiscrimination provision of the ACA prohibits sex-based discrimination by any health program or activity that receives federal financial assistance, or any program or activity that is administered by an Executive Agency or an entity established under the title. 42 U.S.C. § 18116(a) (referring to title IX of the Education Amendments of 1972).   Furthermore, after the Supreme Court held that the "mere receipt of federal funds" did not alone establish waiver of sovereign immunity, Congress enacted the Civil Rights Remedies Equalization Act ("CRREA"). *Miraki v. Chicago State Univ.*, 259 F. Supp. 2d 727, 730 (N.D. Ill. 2003) (quoting *Atascadero*, 473 U.S. at 246–47).   The CRREA states that:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, *or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance*.

42 U.S.C. § 2000d-7(a)(1) (emphasis added).

The Supreme Court has described § 2000d-7 as an "unambiguous waiver of the States' Eleventh Amendment immunity." *Lane v. Pena*, 518 U.S. 187, 200 (1996); *see also Sandoval*, 197 F.3d at 493–94 (collecting cases).   Although the Eleventh Circuit has not expressly decided the issue, courts have held that the ACA nondiscrimination provision, when read in conjunction with the CRREA, effected a valid waiver of sovereign immunity. *See, e.g.*, *Kadel v. N. Carolina State Health Plan for Tchrs. & State Emps.*, 12 F.4th 422, 438–39 (4th Cir. 2021), *as amended* (Dec. 2,

2021).  These courts determined that the CRREA unequivocally conditions the receipt of federal funds upon waiver of immunity.  *See, e.g.*, *Espino v. Regents of the Univ. of California*, 666 F. Supp. 3d 1065, 1084 (C.D. Cal. 2023) (collecting cases).  Courts have reasoned that the ACA nondiscrimination provision is unequivocally a "statute prohibiting discrimination" within the definition of § 2000d-7. *See, e.g.*, *Fain v. Crouch*, 540 F. Supp. 3d 575, 582 (S.D. W.Va. 2021).

The Court is persuaded by this line of cases.  Therefore, the Court finds that—as provided for under the CRREA—Florida waived its sovereign immunity from suit under § 1557 by accepting federal assistance under the ACA.

### b. Failure to State a Claim

Because the Court is satisfied that Plaintiffs' ACA claim against DCF is not barred by sovereign immunity, the Court turns next to DCF's argument that Plaintiffs have failed to state their ACA claim.  DCF argues in its Motion that Plaintiffs fail to describe how DCF participated in any discriminatory or adverse actions taken against her. DE 51 at 11.

Plaintiffs have alleged that DCF, as a recipient of federal financial assistance subject to § 1557, unlawfully discriminated against Ms. Rose "on the basis of sex, including discrimination based on pregnancy, childbirth, and related conditions." DE 16 ¶¶ 53, 63.  Plaintiffs allege that "sex discrimination based on pregnancy and medical decisions around childbirth are rooted in: gender stereotypes of women and people who can become pregnant as 'mothers' or 'mothers to be' who should obey and defer to medical providers." *Id.* ¶ 54.  The Amended Complaint's specific allegations are as follows:

> 31.  While in the hospital, FL DCF caseworker FASO, walked into Ms. Rose's hospital room and immediately began interrogating her about the "bruising" on her child and threatened her with jail.

32.  FASO and other DCF caseworkers interrogated Plaintiffs as to whether they had used their child as a human sacrifice, basing the allegations on Plaintiffs religious beliefs in the Palo Mayombe religion.

34.  While Ms. Rose was in the hospital, City police officers, FASO, and DCF interrogated [Ms.] Rose's husband about the birth[.]

35.  After being discharged from the hospital, Ms. Rose contacted DCF and repeatedly offered to show DCF the birth report prepared by [the midwife] that showed the child was heathy and stable after being born, but DCF refused.

36.  . . . During the court appearance, DCF accused Ms. Rose of not being the child's mother and DCF demanded that Plaintiffs take DNA tests to prove that they were, in fact, the child's parents.

37.  [B]oth of Plaintiffs' children were placed in foster care in Palm Beach County as the result of the accusations by Defendants.

44.  Plaintiffs also contacted several medical experts to review medical records, and asked DCF to speak with each of these experts who all confirmed that the bruising on the child was consistent with pressure from the birth canal due to her frank breech positioning. Each time DCF refused and responded simply by telling Plaintiffs' they were facing jail time.

DE 16. The Court construes Plaintiffs' pleading as alleging that DCF discriminated against Ms.

Rose when DCF (1) initially seized the newborn and then (2) kept the newborn and the two-year-

old child from Ms. Rose's custody for six months.

Plaintiffs allege that DCF interrogated both parents about the circumstances of A.R.'s birth,

accused Ms. Rose of not being A.R.'s mother, and refused to review evidence regarding A.R.'s

birth.  It is not necessarily *unreasonable* to infer that DCF removed the children from Ms. Rose

based solely on discriminatory gender-based stereotypes regarding what a "good" mother should

or should not do.  But Plaintiffs' allegations are more likely explained by DCF's lawful activity:

DCF seized the newborn not because Ms. Rose gave birth at a birth center, but because the hospital

reported bruising on the child.  *See* Part IV.B.1.  And DCF's refusal to review Plaintiffs' proffered

31

medical reports—and therefore return Plaintiffs' children based on the proffered evidence—was not because DCF discriminated against Ms. Rose for giving birth at a birth center, but because the reports confirmed that the circumstances of the birth violated Florida law. *See id.*; Fla. Stat. § 467.015.

At this motion-to-dismiss stage, it is Plaintiffs' burden to allege sufficient factual matter, accepted as true, to "state a claim that is plausible on its face." *Iqbal*, 556 U.S. at 678. Plausibility exists when a court may draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* But because the factual allegations are "not only compatible with, but indeed [are] more likely explained by" lawful activity, the complaint must be dismissed. *Id.* at 680. Therefore, Plaintiffs' ACA Claim (Count I) against DCF is **DISMISSED** for failure to state a claim.

2. Kara Faso

Ms. Faso argues that Ms. Rose's ACA claim should be dismissed due to qualified immunity and failure to state a claim. DE 50 at 11, 14. The Court addresses only the qualified immunity issue. Plaintiffs assert that qualified immunity does not apply because Ms. Faso violated Ms. Rose's clearly established rights, including her "rights against discrimination." DE 52 at 13. But Plaintiffs cannot carry their burden of showing that Ms. Faso violated a clearly established constitutional right by "stating constitutional rights in general terms." *Foy*, 94 F.3d at 1532.

Plaintiffs argue that Defendants "treated [Ms. Rose] differently and unfairly because she chose to give birth at a birth center attended by a midwife instead of a hospital, which led to discriminatory treatment based on gender stereotypes associated with pregnancy and childbirth." DE 52 at 16. But Plaintiffs have not established, as a legal matter, that Ms. Faso had a clearly established duty not to discriminate against Ms. Rose for having a midwife attend to the breech

birth.  Based on Plaintiffs' allegations, the clearly established law is the opposite: Florida does not permit midwives to attend breech births.  *See* DE-1 ¶ 16; Fla. Stat. § 467.015.  Plaintiffs have not, however, brought a constitutional challenge against Florida law for discriminating against mothers. Instead, Plaintiffs seek to hold Ms. Faso individually liable for sex discrimination.

Therefore, Plaintiffs have not met their burden to show that Ms. Faso violated a constitutional right that was clearly established at the time of seizing Ms. Rose's newborn and of keeping Ms. Rose's children from her custody.   Because "only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*," and for the same reasons that qualified immunity applies as to Plaintiffs' § 1983 constitutional claims, qualified immunity also bars Ms. Rose's ACA claim against Ms. Faso.  *Foy*, 94 F.3d at 1532 (quoting *Lassiter*, 28 F.3d at 1149 (alteration in original)).  Plaintiffs' ACA Claim against Ms. Rose (Count I) is **DISMISSED**.

3.  <u>St. Mary's Medical Center</u>

SMMC argues that Ms. Rose's ACA claim should be dismissed because Ms. Rose is not a member of a protected class and because there are no substantive allegations that SMMC discriminated against her. DE 34 at 3.

**First,** SMMC argues that Ms. Rose is not a member of a protected class because a "formerly pregnant woman who has sought medical care for her child is not a member of any protected class." *Id.* at 4.  Plaintiffs allege, however, that Ms. Rose was discriminated against based on harmful stereotypes regarding how a woman should behave as a mother and how a woman should make decisions regarding pregnancy and childbirth. *Id.* ¶¶ 63–64.  Therefore, Plaintiffs'

33

ACA-claim allegations properly concern Ms. Rose's membership in the broader protected class of women.

**Second,** SMMC argues that there are no allegations that Plaintiff was excluded from, denied the benefits of, or subjected to discrimination under any SMMC program or activity. DE 34 at 4.  Plaintiffs' relevant allegations[5] include:

> 29.   Upon arriving at the hospital, Plaintiffs' child was taken by SMMC employees, from Ms. Rose's arms to be examined. After that point, Ms. Rose was not allowed to hold her newborn again while in the hospital. Even after the examination, Ms. Rose's requests to continue bonding with her child and have skin-to-skin contact with her baby were either ignored or dismissed by SMMC and Ms. Rose was never allowed to do skin-to-skin contact for bonding, breastfeeding, bottle feeding, or change the child's diapers.

> 30.   Further, a pediatric surgery consult note from October 8, 2020, in St. Mary's own medical records, corroborated that determination and described the bruising on the child as "without lacerations or bleeding" and "appears as if these are pressure induced injuries."

> 60.   SMMC knew or reasonably should have known that the bruising on A.R. was consistent with a breeched birth.

> 62.   Due to St. Mary's actions and discriminatory handling of Plaintiff Jaimie Rose's healthcare, her children were removed from her care and custody.

DE 16.

The Court construes Plaintiffs' ACA claim against SMMC as being based on the initial seizure of the newborn from Ms. Rose: Plaintiffs allege that SMMC should have known, based on a pediatric surgery consultation, that A.R.'s injuries were consistent with a breeched birth.  Despite this knowledge, Plaintiffs allege, SMMC alerted DCF of potential child abuse and ignored or dismissed Ms. Rose's requests to see her child while at the hospital. *See* Part IV.C.1.

---

[5] Plaintiffs' Administrative Complaint also states that "Ms. Rose immediately felt that hospital staff were angry with her because of her decision to give birth outside of a hospital." DE 16-1 ¶ 17.

Again, however, Plaintiffs do not surmount their burden to plausibly allege that SMMC's actions were the result of SMMC discriminating against Ms. Rose for choosing to give birth at a birth center attended by a midwife instead of a hospital. *See* Part IV.D.1.b.  More plausibly, SMMC observed bruising on a newborn patient and reported potential child abuse based on SMMC's duty as a mandatory reporter under Florida law. *See* Part IV.C.1.  Plaintiffs allege that SMMC should have known the bruising was from a frank breech birth, based on an SMMC pediatric surgery consult note describing the bruising as "pressure induced injuries." DE 16 ¶¶ 30, 60.  But this note does not definitively establish that SMMC personnel knew or should have known, at the time of treatment, that the reported "pressure" was from the birth canal during a frank breech birth, and not from potential child abuse.

Therefore, because SMMC's actions are most plausibly explained by SMMC's lawful activity, Plaintiffs' ACA claim against SMMC is **DISMISSED** for failure to state a claim.

## V.   CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED**:

1.    The Motion to Dismiss [DE 52] by Defendant Shevaun Harris acting in her official capacity as Secretary of the Department of Children and Families is **GRANTED**.  Counts I, II, III, IV, V, VI, VII, VIII, IX, X, and XI against Shevaun Harris acting in her official capacity as Secretary of the Department of Children and Families are **DISMISSED**.

2.    The Motion to Dismiss [DE 50] by Defendant Kara Faso is **GRANTED**.  Counts I, II, IV, V, VI, VII, VIII, X, and XI against Kara Faso are **DISMISSED**.

3.    The Motion to Dismiss [DE 34] by Defendant St. Mary's Medical Center is **GRANTED**.  Counts I, II, V, IX, X, and XI against St. Mary's Medical Center are **DISMISSED**.

4.      The amended pleadings deadline has passed, *see* DE 18, and Plaintiffs have filed

an Amended Complaint.  But because this is the first time that the claims have been dismissed

based on Court ruling, the Court's dismissals are **WITHOUT PREJUDICE** and **WITH LEAVE**

**TO AMEND**.

5.      If Plaintiffs elect to file a second amended complaint, Plaintiffs shall do so no later

than July 28, 2025.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 7th day of July,

2025.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record